# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re<br><br>**MARINER SEAFOOD, LLC**<br><br>Debtor | Chapter 11<br><br>Case No. 20-11870-MSH |

## ORDER GRANTING DEBTOR'S
## MOTION FOR USE OF CASH COLLATERAL

This matter having come before the Court on the *Motion For an Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* (the "Cash Collateral Motion") (ECF No. 5) filed by Mariner Seafood, LLC (the "Debtor"), the debtor and debtor-in-possession in the above captioned case; and the Court having considered the Cash Collateral Motion, the *Affidavit of John P. Flynn in Support of First Day Motions* (ECF No. 10), and the evidence submitted or adduced and the arguments of counsel made at the hearings held on September 16, 2020 and October 1, 2020 (the "Hearings"); and notice of the Hearings having been given in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure and MBLR 4001-2(b); and the Hearings having been held and concluded; and all objections, if any, to the relief requested in the Cash Collateral Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing for the entry of this order; the Court:

1

**FINDS AS FOLLOWS:**

A. On September 14, 2020, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Court. Since the Petition Date, the Debtor has operated as a debtor-in-possession unders §§ 1107 and 1108 of the Bankruptcy Code.

B. This Court has jurisdiction over the Debtor's chapter 11 case and the Cash Collateral Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. The Cash Collateral Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2).

C. Notice of the Hearings was properly given in accordance with Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

D. The United States Trustee (the "U.S. Trustee") filed a notice of appointment of an official committee of unsecured creditors in this case (the "Creditor's Committee") on October 2, 2020 (ECF No. 66) and no trustee or examiner has been appointed.

E. Wells Fargo Credit Facility. Prior to the Petition Date, Wells Fargo Bank, NA ("Wells Fargo") made certain term and revolving credit advances to the Debtor pursuant to various loan documents (the "Loan Documents") that include a security agreement. As of the Petition Date, Wells Fargo asserts that the Debtor owes Wells Fargo in excess of $4,000,000.00, plus accrued and accruing interest, fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees) as set forth in the Loan Documents, to the extent allowable pursuant to § 506(b) of the Bankruptcy Code. Wells Fargo asserts that all amounts owed by the Debtor are secured by valid, perfected, and unavoidable first priority liens and security interests in substantially all of the Debtor's assets, including its cash collateral, as that

term is defined in § 363(a) of the Bankruptcy Code, in which Wells Fargo or any other entity may assert an interest (the "Cash Collateral").

F.      Prior to the Petition Date, Wells Fargo Equipment Finance, Inc. ("Wells Finance", and together with Wells Fargo the "Wells Entities") provided Mariner with a term loan to fund, among other things, equipment purchases. As of the Petition Date, Wells Finance asserts that the Debtor owes Wells Finance not less than $540,000.00, plus accrued and accruing interest, fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys' fees), to the extent allowable pursuant to § 506(b) of the Bankruptcy Code. Wells Finance asserts that all amounts owed by the Debtor are secured by valid, perfected, and unavoidable first priority liens and security interests in substantially all of the Debtor's assets, including its Cash Collateral.

G.      The owners of five (5) cold storage facilities in which the Debtor stores inventory (the "Storage Facility Owners", and together with the Well Entities the "Lien Parties") may assert a lien on Cash Collateral.

H.      Contemporaneously with the filing of the Cash Collateral Motion, the Debtor filed its *Expedited Motion by Debtor And Debtor-In-Possession to (I) Sell Substantially All of Its Assets by Private Sale, Free And Clear of Liens, Claims, Interests, And Encumbrances And (II) Approve Bid Procedures Related to Sale* (the "Sale Motion"), pursuant to which it proposes to sell substantially all of its assets as a going concern (the "Sale"). In conjunction with the Sale, Wells Fargo has agreed, conditioned upon the closing of the Sale, to provide a carve-out, from the proceeds of the Sale: (i) of $417,000 to be used to pay the professional fees and costs of the Chapter 11 bankruptcy estate's professionals (the "Fee Carve Out"); and (ii) for any quarterly or other fees incurred during the Budget Period (as defined below) and payable to the U.S. Trustee

3

pursuant to 28 U.S.C. § 1930(a) (the "UST Carve Out", and together with the Fee Carve Out the "Carve Out"). Provided that Wells Fargo receives a total of not less than $2,350,000.00 from the Sale at the time of the closing, the Wells Entities have consented to the Sale and the Sale Motion.

    I.    The Debtor has presented evidence that (i) its ability to maintain relationships with its vendors, suppliers and customers, and to pay its day-to-day expenses, is essential to the Debtor's continued viability and (ii) absent the use of Cash Collateral: (a) it does not have sufficient available sources of working capital and financing to carry on the ordinary course operation of its business; (b) the continued operation of the Debtor's business would not be possible, and serious and irreparable harm to the Debtor, its assets and its estate would occur; and (c) it will not be possible to preserve the Debtor's going concern value and the opportunity presented in the Sale Motion would be lost.

    J.    The Debtor's need to use Cash Collateral is immediate and critical to enable the Debtor to administer its chapter 11 case generally, continue to operate its business, pay its usual and customary expenses in the normal course, and preserve the value of the estate for all stakeholders.

    K.    Subject to the terms and conditions of this order, the Wells Entities are willing to permit the Debtor to use Cash Collateral solely for the purposes set forth in, and in accordance with the terms and conditions of, the Budget (as defined below), and has stipulated to the entry of this order.

    L.    The terms of Cash Collateral arrangement described in this order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The

terms of the Debtor's use of Cash Collateral set forth in this order were negotiated in good faith and at arms' length between the Debtor and Wells Fargo.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:**

1. Capitalized terms not otherwise defined in this order shall have the meanings ascribed to them in the Cash Collateral Motion.

2. The Cash Collateral Motion is granted as set forth in this order. Any objections to the Cash Collateral Motion, to the extent not withdrawn or resolved, are hereby overruled.

3. The Debtor is authorized to use Cash Collateral through and including October 30, 2020 (the "Budget Period"), in accordance with the budget attached as Exhibit A (the "Budget"), except that in the week ending 10/30/20:

    a. The amount in line "Professional fees – M&K and SMSL" shall be reduced from $70,000 to $10,000; and

    b. The amounts in lines "Tully and Holland – M&A" and "US Trustee" shall be reduced to $0.

Commencing two weeks from the date of this order and continuing every two weeks thereafter, the Debtor shall deliver to the Storage Facility Owners, the Wells Entities and the Wells Entities' counsel a variance report from the previous two-week period comparing the Debtor's actual receipts and disbursements with the receipts and disbursements in the Budget. The Debtor's actual disbursements shall not exceed the aggregate of the total disbursements set forth in the Budget for the Budget Period by more than fifteen percent (15%). The Debtor shall also provide to the Lien Parties a copy of the Debtor's monthly operating report submitted to the U.S. Trustee.

4. All amounts to be paid from Cash Collateral, in accordance with the Budget and on account of Professional Fees, Consultant Fees and fees owed to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) during the Budget Period, shall be remitted to Murphy & King, Professional Corporation ("M&K"), to be held in M&K's client funds' IOLTA account and disbursed, only

5

upon further order of the Court, to the court-approved Chapter 11 professionals of the debtor's estate for fees and expenses as ordered by the Court, and to the U.S. Trustee, with any remainder, after the payment of all allowed fees and expenses of the Chapter 11 professionals of the debtor's estate, to be turned over to the estate represenative.  Upon the closing of the Sale, the amount of $384,000 shall be remitted to M&K's client funds' IOLTA account consisting of the following line items in the Budget provided however that (a) and (b) may only be disbursed upon further order of the Court:

    a.    Professional fees – M&K and SMSL: $60,000;

    b.    Tully and Holland – M&A: $250,000; and

    c.    US Trustee: $74,000.

Any Cash Collateral held in M&K's IOLTA account and paid on account of the Carve Out shall be credited against the Carve Out.  In the event that the Sale does not close and the Wells Entities chose not to consent to the use of the cash reserved in M&K's IOLTA account for the purposes set forth in the Carve Out, then the Debtor's waiver of its rights under § 506(c) of the Bankruptcy Code, described in paragraph 8 of this order, shall be null and void, and of no effect.

    5.    For the purposes of §§ 361, 363(e) and 507(b) of the Bankruptcy Code, as adequate protection for the Debtor's use of Cash Collateral, and subject only to the Carve Out, the Lien Parties are granted replacement liens (the "Replacement Liens") on the same types of post-petition property of the Debtor's estate against which the Lien Parties held liens as of the Petition Date.  The Replacement Liens shall maintain the same priority, validity and enforceability as the Lien Parties' respective pre-petition liens.  The Replacement Liens shall be recognized only to the extent of the post-petition diminution in value of the Lien Parties' respective pre-petition collateral resulting from the Debtor's use of Cash Collateral.

6. The Replacement Liens shall not attach to any avoidance powers held by any of the Debtor or any trustee for the Debtor, including those avoidance powers set forth in §§ 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or to the proceeds of any claims under or actions commenced pursuant to such powers.

7. The Lien Parties shall have all rights and entitlements afforded by § 507(b) of the Bankruptcy Code.

8. **Waiver of § 506(c) Rights. Subject to paragraph 4 of this order, and in consideration for the Carve Out, any rights of the Debtor to surcharge the Wells Entities and/or their collateral pursuant to § 506(c) of the Bankruptcy Code during the Budget Period has been waived by the Debtor. This is a variance from the requirements of MLBR 4001-2(c). Nothing herein shall effect the Debtor's rights under § 506(c) after expiration of the Budget Period, which rights are hereby specifically preserved.**

9. **Acknowledgment of Lien. For all purposes in this bankruptcy case, including in any subsequent chapter 7 proceeding, and in consideration of the Carve Out, the Debtor acknowledges and admits that the Wells Entities claims are secured by valid, enforceable, and perfected, first priority liens on and security interests in substantially all of the Debtor's assets; provided that, any Official Committee of Unsecured Creditors, Chapter 11 Trustee, or Chapter 7 Trustee appointed by the U.S. Trustee shall be permitted to challenge the validity, enforceability and/or perfection of the Wells Entities' liens, but only as to any such matter that is the subject of an actual claim, right, cause of action, or challenge filed with the Court on or before the ninetieth (90th) day following the filing of the notice of appointment of the Official Committee of Unsecured Creditors (as such deadline may be extended by the Wells Entities).**

10. Nothing in this order shall constitute a waiver by or restrict the Debtor's right to seek the further use of Cash Collateral.

11. This Court has not been asked to find, and it does not find, that any asserted security interest or lien is valid or perfected. Nothing contained in this order is intended, or shall be deemed, to be a ruling on the extent or validation of any creditor's asserted security interest or lien.

12. The entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) Wells Fargo's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection; (b) Wells Fargo's rights under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request the dismissal or conversion of this bankruptcy case, or (iii) request the appointment of a chapter 11 trustee or examiner with expanded powers; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise).  Wells Fargo's consent to this order shall not be deemed an admission of any fact or a waiver of any right.

13. Within three (3) business days after entry of this order, the Debtor shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of this order on the Notice Parties.

14. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

Document      Page 9 of 11

15. <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction and power to enforce this order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this order.

_____
Melvin S. Hoffman
United States Bankruptcy Judge

Dated: October 5, 2020

EXHIBIT A

**Mariner Seafood - Cash Collateral Projections**
*In Thousands of Dollars*

| | Sep 1 | Sep 2 | Sep 3 | Oct 4 | Oct 5 | Oct 6 | Oct 7 | Total |
|---|---|---|---|---|---|---|---|---|
| WEEK ENDING-> | 9/18/20 | 9/25/20 | 10/2/20 | 10/9/20 | 10/16/20 | 10/23/20 | 10/30/20 | |
| **Total Sales** | **590** | **590** | **590** | **590** | **590** | **590** | **590** | **4,130** |
| Beginning Cash | 211 | 220 | 260 | 181 | 208 | 254 | 297 | |
| **Cash Receipts** | | | | | | | | |
| Accounts receivable collections | 568 | 590 | 590 | 590 | 590 | 590 | 590 | 4,108 |
| Other receipts - Non-AR | - | - | - | - | - | - | 2,750 | 2,750 |
| Total    Cash Receipts | **568** | **590** | **590** | **590** | **590** | **590** | **3,340** | **6,858** |
| **Operating Disbursements** | | | | | | | | |
| Salaries - general, administrative and indirect | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 154 |
| Employee benefits | - | - | 7 | 11 | - | - | - | 18 |
| Direct materials - current purchases | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 2,181 |
| Direct labor - current labor | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 945 |
| Insurances | 8 | - | - | - | - | - | - | 8 |
| Rent - 14 South St, 86 McArthur Dr, 11 Hassey St and Darn It | - | - | 34 | - | - | - | - | 34 |
| Utilities | - | - | 31 | - | - | - | - | 31 |
| Professional fees - M&K and SMSL | 15 | 10 | 10 | 10 | 10 | 10 | 70 | 135 |
| Consultant - Navera | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 17 |
| Tully and Holland - M&A | - | - | - | - | - | - | 250 | 250 |
| Consultants/temp labor | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 14 |
| US Trustee | - | - | - | 10 | - | - | 74 | 84 |
| Creditor committee attorney | 3 | 3 | 3 | 2 | 2 | 2 | 2 | 17 |
| Freight | 18 | 18 | 18 | 18 | 18 | 18 | 18 | 126 |
| Office supplies/expenses | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 |
| Repair and maintenance | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 |
| Manufacturing supplies/plant expenses - current purchases | 32 | 32 | 32 | 32 | 32 | 32 | 32 | 224 |
| Equipment rent/lease - Wells Fargo | 4 | - | - | - | 4 | - | - | 8 |
| Uniforms for production | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 |
| Storage/terminal fees | 1 | 8 | - | - | 1 | 8 | - | 18 |
| Third party production/inspection | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 |
| Automobile/leases | - | - | 3 | - | - | - | - | 3 |
| Other AP disbursements | 1 | 1 | 5 | 1 | 1 | 1 | 1 | 11 |
| Total    Operating Disbursements | **559** | **550** | **621** | **561** | **544** | **548** | **924** | **4,306** |
| **Operating Cash Flow** | **9** | **40** | **(31)** | **29** | **46** | **42** | **2,416** | **2,552** |
| **Other disbursements** | | | | | | | | |
| Wells Fargo - principal | - | - | - | - | - | - | 2,350 | 2,350 |
| Adequate Protection Payment | - | - | 20 | - | - | - | - | 20 |
| Wells Fargo - bank fees | - | - | - | 2 | - | - | - | 2 |
| Wells Equipment - P&I | - | - | 16 | - | - | - | - | 16 |
| Ryder - capital lease | - | - | 12 | - | - | - | - | 12 |
| Total Other disbursements | **-** | **-** | **48** | **2** | **-** | **-** | **2,350** | **2,400** |
| **Net Cash Flow** | **9** | **40** | **(79)** | **27** | **46** | **42** | **66** | **152** |
| Cash balance | 220 | 260 | 181 | 208 | 254 | 297 | 363 | 363 |
| Beginning A/R | 2,562 | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 | 2,562 |
| Revenue | 590 | 590 | 590 | 590 | 590 | 590 | 590 | 4,130 |
| Cash Receipts | (568) | (590) | (590) | (590) | (590) | (590) | (590) | (4,108) |
| Ending A/R | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 | 2,584 |
| Beginning inventory | 1,748 | 1,758 | 1,767 | 1,776 | 1,785 | 1,795 | 1,804 | 1,748 |
| Inventory - sales | (302) | (302) | (302) | (302) | (302) | (302) | (302) | (2,116) |
| Inventory - purchases | 312 | 312 | 312 | 312 | 312 | 312 | 312 | 2,181 |
| Ending inventory | 1,758 | 1,767 | 1,776 | 1,785 | 1,795 | 1,804 | 1,813 | 1,813 |